Moore, J.
This action was originally taken in the court of common pleas of Hancock county to enjoin the defendants from issuing the bonds of said village, and from erecting gas works, or putting down pipes, or in any manner purchasing grounds, sinking wells, or doing any act under a special abt of the legislature of Ohio passed authorizing the village of Findlay to issue bonds and do the things named.
The material averments of the petition are in substance: That the plaintiff is a corporation, duly incorporated under the laws of Ohio, and has been such ever since 1870; that it owns real estate and fixtures, metal pipes and other property, upon which it pays a large amount of taxes and will be assessed to pay any bonded indebtedness of said village; that the defendant, the village of Findlay, is a municipal corporation, and the other defendants are its officers; that the gas trustees are duly appointed and especially to proceed under a *238 local act of the legislature passed, authorizing, said village to issue bonds, etc.; that by an ordinance of said village, and the acceptance thereof by the plaintiff on September 16,1874, the plaintiff was duly authorized to erect gas works in said village, to use the streets, etc., for pipes — the village agreeing to pay $31.50 per post per year for street light for ten years, and gas to private families at a price named; that during the ten years, and ever afterwards, the pipes and gas works should be the property of the plaintiff and protected as other private property; that, relying upon the good faith of said village, the plaintiff did erect its gas works at a cost of $45,000, has complied with the contract, and, since its expiration, has supplied gas to light the streets and for private use upon the terms agreed upon; that natural-gas was discovered in 1883, and a company formed and incorporated called The Findlay Natural Gas Company; that it was authorized to use the streets and alleys to lay down pipe for light and heat; that the plaintiff, finding or ascertaining that the natural gas could be utilized, and that it would supplant the manufactured article, turned the same into its pipes and supplied the village and citizens with it for light and heat, and extended its pipes, etc., at a large expense, and it was encouraged to do so by the defendants; that it afterward, on the 18th of August, 1885, purchased all the property of the Findlay Natural Gas Company for $33,333, payable in the stock of the company at par; that plaintiff has now invested in said business $125,000 — -(the petition then sets Out in detail what it has learned of natural gas, which is immaterial to state here, and also avers the rates at which it furnished gas to consumers) that the council claim, and the plaintiff has never denied, its right to fix the price of gas, and it has never failed or refused to furnish gas at the price fixed, and that it has wells sufficient to supply the demand ; that it is proposed by said village to issue $40,000 of its bonds, to be used in boring wells, laying down pipes, etc., to furnish gas to corporations, manufactories, and for private consumption at a nominal price — the actual cost only; that a local act of the legislature is claimed to have been passed so authorizing, upon a -majority vote being cast, at an election held for that purpose; that the election has been held and *239 that a majority voted therefor, and that the defendants are about to issue the bonds, and with the proceeds sink the wells, etc., and do the several acts named. That the act of the legislature is illegal, unauthorized and unconstitutional. 1st. Because it is not within the municipal powers or duties of the defendants. 2d. Because it is in contravention of sec. 6, art. 8, of the constitution. 3d. That the effect will be to lower the price to be paid by business houses and private consumers which is in excess of the powers of the defendants. 4th. That it will take gas from gas-producing lands and lots, the increased value thereof, without compensation. 5th. That it will create an unjust and ruinous competition with the owners of gas wells. 6th. Same substantially as the fourth. 7th. That the threatened or proposed acts are in violation of the protection and recognized ownership of plaintiff, after said ten years, and thereby its large investment of $125,000 will be destroyed. 8th. That in view of ail the facts stated it is inequitable for the defendants to erect gas works. 9th. That the said local act never in fact passed; that the bill that, passed the senate was not in fact the same bill that passed the house; that it omitted from its provisions the amendments made by the house, and prays as stated.
The defendants’ answer, by its special denials and averments, puts in issue all the allegations of the petition except that the defendant, acting within its corporate powers, is about to issue its bonds authorized by law, and to bore wells, lay pipes and supply gas for heating and lighting purposes. The defendants also aver, that the plaintiff did not at any time, or in any manner, at or before the filing of the petition, or at any time at all, make any request of the solicitor of the village of Findlay to commence its action as provided by law ; and further, that this action was not commenced and prosecuted in the name of the party authorized by law to so prosecute it. An amendment to the petition, as also an amended and supplemental answer are filed. They contain nothing, however, beyond what will be noticed in disposing of the facts in the case, and nothing is put in issue more than is made by the special denials of the original answer, except that the amended answer avers that the $40,000 of bonds *240 have been issued and sold and the work has progressed partly to completion; and that the ordinances and acts of the council were fully authorized and had under the general provisions of the Revised Statutes of the state. A reply puts in issue most of the averments of the amended and supplemental answer.
The plaintiff founds its right to maintain this action upon two grounds: 1st. Because it is a taxpayer, and will be required to pay the amount assessed against it to liquidate any indebtedness incurred. 2nd. Because it has contract rights growing out of its relations with the corporation of Findlay which will be violated, and that it -will be inequitable to permit the defendant to do what it is alleged it proposes to in and about the issuing of bonds and furnishing gas as contemplated. As to the first proposition, section 1777, of the Revised Statutes, provides, in defining the duties of a solicitor of a municipal corporation, “ that he shall apply to a court of competent jurisdiction for an order or injunction to restrain the misapplication of the funds of the corporation or the abuse of its corporate powers.” Section 1778 provides: “In case he fails, upon the request of any taxpayer of the corporation, to make the application provided for in the preceding section, it shall be lawful for such taxpayer to institute suit for such purpose in his own name on behalf of the corporation ; provided that no such suit or proceeding shall he entertained by any court until such request shall have first been made in writing.” There is no averment in the petition that the plaintiff made such request, and no evidence that it was made. The fact is, no such request was made by the plaintiff, nor is this action brought by the taxpayer on behalf of the corporation as required. It is brought by and on its own behalf.
It is claimed, however, on the part of the plaintiff, that this suit is not brought to enjoin the council or village for an abuse of its corporate powers, but that the acts contemplated are in excess of its corporate rights. We fail to see the distinction claimed, and can not see how a greater abuse of corporate power could be exercised than to issue the bonds of the corporation, incur an indebtedness, and do the other acts charged in the petition, without any authority so to do. It is also *241 claimed that the provision of the statute is merely technical, and while a suit can be brought under it, it can also be prosecuted in the mode adopted in this case, and that it is an unreasonable and useless provision. If the statute means anything, it goes to the jurisdiction of the court to entertain the action, and we are not aware that any requirement or right to prosecute a suit, giving the court jurisdiction, can be technical in the sense used by counsel. The statute is a reasonable one. It evidently contemplates that in an action like the one at bar, one suit shall determine the controversy, and not that each taxpayer shall bring his suit where there is a community of interests, involving the rights of all taxpayers of the municipality. It is evidently intended to prevent a multiplicity of suits, and to have a speedy determination of questions involving the rights and liabilities of all taxpayers and citizens of the city .or village.
The claim made — that suits so frequently brought to enjoin assessments made by county commissioners and the officers of municipal corporations, and entertained by the courts, and involve the same rights, are in point and fully sustain the position taken by the plaintiff — cannot be maintained. Such suits are brought to enjoin special assessments. Such assessments are made for the improvement of streets or roads, or to construct drainage, and involve only the property benefited and not a tax upon all the taxable property within the city village or county. In such case the party interested may bring his action, of if it is of common or general interest, the code provides in section 5008, that when the parties are numerous, or the question is of common or general interest, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all. This provision is applicable to the class of cases mentioned. That is, where there are common or general interests as in cases of assessments, and to avoid in such cases a multiplicity of suits. It is not, however, applicable to actions where a general tax is levied upon all the taxpayers of a village or city. The claim that it would have been futile to have made the service upon the solicitor, because he was the attorney of the village, cannot excuse the plaintiff from performing the condition *242 precedent required by the statute. It is because he is the attorney of the village that the duty is imposed upon him, and we cannot assume that he would not have performed his duty. At least it cannot change the requirement of the statute; That a demand was made by another person — other than the plaintiff — since this suit was commenced, cannot avail in this action.
The second inquiry to be made is: Had the plaintiff such contract rights growing out of its relations to the defendants as to give it the right to the remedy sought for — the wrongs complained of? This leads us to determine the relative rights and duties of both parties. That the plaintiff has made a prima facie case of its corporate existence is clear to us, and we pass that question. The plaintiff was authorized by ordinance passed August 26, 1874, and accepted by it September 26, 1874, to lay pipes in the streets and 'alleys of the village and erect gas works; also, by contract, as part of the ordinance, to furnish gas for lighting the streets and public buildings for a period of ten years at a price named. The plaintiff, by its charter, and by virtue of which it contracted with the city, was authorized “ to manufacture and furnish within said village of Findlay * * * illuminating gas to the extent that the same may be required for lighting the streets, public grounds and public and private buildings in said village.”
The right to furnish for other purposes ia provided by sec. 3550, Rev. Stats. The right to produce and furnish natural gas was not given under the charter, nor did it exist in the statutes of the state at the time named. The right of such company to furnish natural gas.for fuel in cities of the third grade of the second class, having a population not exceeding 16,000, was given by legislative action May 6th, 1885, 82 Ohio L., 213. Under the statute of the 13th of March, 1880, 77 Ohio L., 83, a municipal corporation is authorized to use, or grant the use of its streets and alleys, to lay pipes and drains to supply its inhabitants with heat and power. 3rd vol. Statutes, 627, Rev. Stats. Sec. 1 of that act provides as follows: “ That any municipal corporation may, by ordinance, use, or grant the use of its streets, avenues, alleys, lanes *243 and public places, to lay pipes and drains under the surface thereof for the purpose of supplying its inhabitants with heat and power, upon such terms as such' corporation may deem proper.”
Under the provisions of secs. 2478 and 2491 of the Revised Statutes, as amended at the present session of the legislature, authority is given to the council of a municipal corporation to regulate the price of natural gas or artificial gas, and which statute provides as follows: “ H. B. No. 834 — A bill to amend secs. 2478 and 2491 of the Rev.‘ Stats, of Ohio. 1. Be it enacted by the General Assembly of the State of Ohio, That secs. 2478 and 2491, as amended April 2, 1880, (77 Ohio L., p. 109) of the Rev. Stats., are so amended as to read as follows: Sec. 2478. The council of any city or village in which natural or artificial gas companies, or gas light and coke companies, may be established, or into which their pipes or mains may be conducted, are hereby empowered to regulate from time to time the price which such natural or artificial gas or gas light and coke companies may charge for lighting or fuel purposes, furnished by such companies to the citizens, public grounds and buildings, streets, grounds, alleys, avenues, wharves and landing places, and such natural or artificial gas or gas light and coke companies shall, in no event, charge more for any natural or artificial gas furnished to such corporation or individuals, than the price specified by ordinance of such council; and such council shall also have power to regulate and fix the price which such companies may charge for rent of their meters.
“ Sec. 2491. A municipal corporation may contract' with such company for supplying with natural or artificial gas, for the purpose of lighting or heating the streets, squares and other public places and buildings in the corporation limits; but this section shall be subject to the restrictions in the last clause of thirty-five hundred and fifty-one.”
The plaintiff did, under its ten year contract, furnish gas as it contracted to do, since which time no further arrangements were made with the defendant beyond a temporary supply. The plaintiff entirely abandoned the manufacture and supply of artificial gas, and permitted it to be superseded by natural *244 gas, and undertook to supply such natural gas in lieu of the gas it was authorized to furnish. If, under its charter and the statutes, as they existed, the plaintiff had no authority to utilize and supply natural gas, it cannot now complain of the acts of the defendant. We have arrived at the conclusion that it had no such power. 1st. Because at the time of the enactment of the statutes, defining the right of gas companies, the legislature could not have had in its mind, or contemplated the furnishing, distribution or use of any other than artificial or manufactured gas. 2d. The franchise granted to a company for the production and distribution of natural gas, would be of more value, different, and more extensive than for artificial gas, and could not have been contemplated, or in the mind of the plaintiff and the defendant at the time the franchise was granted in 1874. It was a product unknown to the parties, and its use no more contemplated than the electric light. 3rd. By subsequent acts of the law-making power, as we find it expressed in the statutes noted, and others, a legislative construction has been placed upon the original statutes clearly to the effect, that they did not, in their provisions, grant anything beyond than the right to manufacture and distribute artificial gas. 4th. The charter itself provides and authorizes “ the Findlay Gaslight Company ” to manufacture and furnish * * * illuminating gas to the full extent that the same may be required for lighting the streets, etc., of Findlay. It follows, therefore, under sec. 2482 of the Revised Statutes, that the plaintiff, having failed to furnish and, under the proof, having abandoned the manufacture and distribution of artificial gas, as under the law above it could do, it cannot now complain of the defendant. By the same section the municipal corporation had the power to proceed and erect gas works and supply its citizens. That section provides as follows: “ A neglect to furnish gas to the citizens, and other consumers of gas, to the corporation, by any company, in accordance with the prices fixed and established by the council from time to time, shaLl forfeit all right of such company under the charter by which it has been established; and the council may proceed to erect, or by ordinance empower any person to erect gas works for the supply of gas to such corporation and its citizens.”
*245 Under paragraph 18, sec. 2683, the council had power to levy-taxes for lighting the corporation, and also erecting gas works, etc. If the bonds issued can be provided for without increasing or exceeding the levy authorized, and if issued to anticipate the tax, it is not required that the question be submitted to a vote.
Sec. 2683. For erecting, enlarging or improving gas works and for lighting the corporation. See. 2687 provides when such vote is necessary, as follows: “ A greater tax than that authorized by this chapter may be levied for either of the purposes mentioned therein, if the proposition to make such levy shall have first been submitted to a vote of the electors of the corporation, under an ordinance prescribing the time, place and manner of voting on the same, and approved by a majority of those voting on the proposition.”
So that the council, in either event, had the power to provide for lighting the corporation. The provision just cited does not provide that the question shall be submitted at a general election. Either with an election authorizing a greater levy than provided for, or limiting the amount to the levy provided for, the council can anticipate the expenditure necessary to make the improvement by issuing the bonds.
Sec. 2837, providing that officers of municipal corporations and township trustees shall, at a general election, submit the question of issuing bonds to provide for contemplated expenditures, does not control, and is not to be applied as contended for by plaintiff. In the case at bar, there is no proof other than that the eight mills authorized to be levied for all purposes will be sufficient to meet the amount of the liability incurred for the contemplated improvement. If so, the questions raised as to whether the vote taken was under the special act or general statute, or whether it was, submitted at a general or special election, are immaterial, and the discussions of such questions can be of interest only in the event that the eight mill levy authorized by the statute will be inadequate to meet the amount of the indebtedness incurred as it matures and is anticipated by the issue of the bonds. In the view of the levy not being sufficient, we have spoken of t.he submission of the question to a vote.
A. & J. Blachford, E. T. Dunn and J. F. Burhet, for plaintiffs.
J. A Bope and M. O. Whiteley, for defendants.
This brings us to the conclusion that, under the statutes, the defendant, the village of Findlay, had the power to provide for lighting and heating its streets and alleys and public grounds, and to furnish light and heat to its citizens. That to do so, it utilized the means which nature had so bountifully provided, certainly can not be a subject of complaint, it being the best and cheapest possible to be produced or used. The plaintiff has no equity to enforce. The village is not its competitor fin the manufacture of gas. That, it abandoned long prior to the time that the defendant undertook to furnish light and heat. It can hardly be contended that, of the new product so cheaply and bountifully supplied, the plaintiff shall have a monopoly. To permit it would be inequitable and unjust. The rights of the parties are determined under the general legislation. It is of no consequence to determine whether the special act is or is not valid. It is entirely immaterial in the view taken of the case by the court.
We, therefore, find that the plaintiff’s petition cannot be maintained upon either of the grounds upon which it is predicated, and the decree will be foffthe defendants, at the costs of the plaintiff, and remanded for execution.